USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY KOZLOW,

                    Petitioner,

- against -

MARTIN F. HORN, Commissioner,
N.Y.C. Department of Probation,

                    Respondent.

**REPORT AND RECOMMENDATION**

09 Civ. 6597 (LTS) (RLE)

To the HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:

## I. INTRODUCTION

Petitioner Jeffery Kozlow seeks a writ of habeas corpus pursuant to 28 U.S.C § 2254. The Petition was filed on July 24, 2009. Kozlow was convicted in Westchester County, New York, of five counts of attempted dissemination of indecent materials in the first degree (former N.Y. Penal Law § 235.22) and sentenced to five years' probation. Kozlow challenges his conviction on the grounds that former New York Penal Law § 235.22, as construed by the New York Court of Appeals, was unconstitutionally vague and failed to give fair notice of what was prohibited as is required by the Due Process Clause of the United States Constitution. (Petition ("Pet.") ¶ 12.) For the reasons set forth below, I recommend that the Petition be **DENIED**.

## II. BACKGROUND

### A.    Factual Background[1]

On March 4, 2004, Investigator Pascal Storino, working undercover in an online investigation, met Kozlow in an America Online chat room. (Pet'r's Mem. of Law in Support of

---

[1] This Court does not have the transcript of Kozlow's trial. The factual recitation herein is based upon the submissions by Kozlow and the State both in this Court and on direct appeal to the New York Court of Appeals. 28 U.S.C. § 2254, Rule 5 ("If a transcript cannot be obtained. . . a narrative summary of the evidence [may be submitted]."); *See Elliott v. Kuhlmann*, No. 97 Civ. 2987 (PKC) (DF), 2004 WL 806986, at *2 (S.D.N.Y. April 9, 2004); *Douglas v. Portundo*, 232 F. Supp. 2d 106, 109 n.1 (S.D.N.Y. 2002). This Court finds that the current record suffices to resolve Kozlow's claims, particularly since the facts are not in dispute.

Pet. for Writ of Habeas Corpus ("Pet'r's Mem.") at 5). The two engaged in a series of sexually explicit communications by way of AOL Instant Messaging and emails. (*Id.*) Throughout the course of their sexually explicit dialogue Storino used a fourteen-year-old boy persona with a screen name of "JohnInYonkers914." (Respt's Mem. of Law in Opp. to Pet. for Writ of Habeas Corpus ("Resp't's Mem.") at 2.) Much of the conversation consisted of sexually frank dialogue but did not include sexually explicit images. (Pet'r's Mem. at 5.)

On March 23, 2004, Kozlow described to "JohnInYonkers914" a previous sexual encounter that he had with a man, and the two exchanged pictures. (Resp't's Mem. at 2.) On April 7, 2004, Kozlow discussed his first sexual experiences with a male and asked "JohnInYonkers914" when he liked to masturbate. (*Id.* at 3.) Kozlow told "John" that he was "serious" about teaching him about sex with males, and described in graphic detail what he would do sexually with someone who had never been with a man before. (*Id.*) On April 23, 2004, Kozlow went into detail about what he would do to the boy when they met. (*Id.*) Kozlow was led to believe that "John" was masturbating, and he described in detail his fantasies about what sexual acts he intended to perform on "John." (*Id.*)

As the discussions continued, the undercover investigator pushed for the two to meet but Kozlow was reluctant. (Pet'r's Mem. at 5.) When they talked on April 26, 2004, they discussed a possible meeting, but Kozlow backed out. (Resp't's Mem. at 4.) On May 12, 2004, Kozlow indicated that he would like the boy to come to New York City for a meeting, but he said that he was nervous because he could get into "big trouble." (*Id.*) On September 17, 2004, Kozlow told "JohnInYonkers914" that he was feeling "scared" about the meeting and canceled. (*Id.* at 5.)

On June 24, 2004, "John" told Kozlow that he was coming to New York City. (*Id.* at 6.) Kozlow suggested a meeting at Hudson News in Grand Central Terminal on the condition that

2

the two would just "talk." (Pet'r's Mem. at 5.) Over the next two days Kozlow repeatedly emphasized that the meeting was just to "talk," and the two agreed to meet at Grand Central Terminal. (*Id.*)

On June 28, 2004, officers apprehended Kozlow near the Hudson News Store in Grand Central Terminal. (*Id.* at 6.) Kozlow was taken to the Grand Central MTA Police Station where he was searched. (*Id.*) In his statement to the police he acknowledged that he had used a computer in his apartment to engage in sexual conversations and that he believed he was communicating with a minor. (*Id.*) He said that he believed you "could say anything to anyone." (*Id.*) A forensic examination revealed that the computer Kozlow had used to communicate with "JohnInYonkers914" did not contain any pornographic images. (*Id.* at 7.)

**B.   Procedural Background**

Kozlow waived his right to a jury trial, and proceeded to trial before the Honorable Joseph S. Alessandro on May 9, 2005. (Resp't's Mem. at 2.) The case was tried almost entirely on a stipulated record, consisting primarily of the transcripts of Kozlow's online communications. (Pet'r's Mem. at 4.) Kozlow did not contest that he had engaged in online communications with a person whom he believed to be a minor, but stated that he was engaged only in online fantasy and did not intend to lure the minor into sexual contact with him. (*Id.* at 4-5.) On May 11, 2005, Judge Alessandro found Kozlow guilty of all five counts of attempted dissemination of indecent materials in the first degree. (*Id.*) On July 27, 2005, Kozlow was sentenced to five years probation. (*Id.*)

Kozlow appealed his conviction, which was unanimously reversed by the Appellate Division on July 25, 2006. *People v. Kozlow*, 821 N.Y.S.2d 212 (App. Div. 2006). On appeal, Kozlow raised four claims: (1) Penal Law § 235.22(1) did not proscribe purely textual

3

communications with a minor; (2) the word "depict," if held to encompass text-only communications, was unconstitutionally vague as applied; (3) the People had constructively amended the indictment; and (4) the convictions were not supported by sufficient evidence and were otherwise against the weight of the evidence. In reversing the conviction, the Appellate Division found that § 235.22(1) prohibited only the dissemination of visual "sexual images." *People v. Kozlow*, 821 N.Y.S.2d at 213. The Appellate Division did not reach the remainder of the Kozlow's claims.

The State appealed, and the Court of Appeals reversed and reinstated Kozlow's conviction on April 26, 2007. *People v. Kozlow*, 8 N.Y.3d 554 (2007). The court found that former New York Penal Law § 235.22, properly construed, prohibited the use of any sexually explicit computer-generated communications intended to lure minors, including text-only communications. The Court of Appeals also considered and rejected Kozlow's argument that § 235.22 was void for vagueness. *Kozlow*, 8 N.Y.3d at 561.

On December 26, 2007, the Appellate Division addressed Kozlow's remaining claims, holding that the evidence of enticement was sufficient; the conviction was not against the weight of the evidence; and there was no constructive amendment of the indictment. *People v. Kozlow*, 851 N.Y.S.2d 577 (App. Div. 2007). Leave to appeal to the Court of Appeals was denied on May 2, 2008. *People v. Kozlow*, 10 N.Y.3d 865 (2008). Kozlow filed the instant Petition on July 24, 2009, challenging his conviction on the grounds that former New York Penal Law § 235.22, as construed by the New York Court of Appeals, was unconstitutionally vague and failed to give fair notice of what was prohibited as is required by the Due Process Clause of the United States Constitution. (Pet. ¶ 12.)

4

## III. DISCUSSION

### A. Threshold Issues

#### 1. Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S. C. § 2244(d)(1). A conviction becomes final " 'when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],' " that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (*quoting Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). Kozlow's conviction thus became final on July 31, 2008, and his Petition, which was filed on July 24, 2009, is timely.

#### 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." *Jones v. Vacco*, 126 F.3d 408, 412 (2d Cir. 1997) (*quoting Daye v. Attorney Gen.*, 696 R. 2d 186, 191 (2d Cir. 1982) (*en banc*)).

Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). He must raise a federal claim at each level of the state court system, "present[ing] the

substance of his federal claims 'to the highest court of the pertinent state.'" *Id.* (*quoting Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)). Kozlow's federal due process claim was heard and rejected by the New York Court of Appeals. *Kozlow*, 8 N.Y.3d at 561. He has therefore exhausted all state judicial remedies.

## B. Standard of Review

### 1. Unreasonable Application of Federal Law

The AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Kozlow does not contend that the New York Court of Appeals articulated the void-for-vagueness doctrine in a manner that contradicts Supreme Court precedent, nor does he mention any case with materially indistinguishable facts.

Kozlow's Petition is predicated upon an "unreasonable application" of Federal law. *See Lurie v. Wittner*, 228 F.3d 113, 128 (2d Cir. 2000) ("Where the state-court decision is not directly opposed to Supreme Court precedent, but involves an application of the high court's case law, federal habeas petitions are judged under the 'unreasonable application' standard."). A decision constitutes an unreasonable application of clearly established federal law, if "[t]he state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the

particular state prisoner's case." *Williams*, 529 U.S. at 407. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* The Court may not issue the writ simply because it concludes in its independent judgment "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lurie*, 228 F.3d at 129 (*quoting Williams*, 529 U.S. at 411). It is "well-established in [this][C]ircuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Ortiz v. N.Y.S. Parole*, 586 F.3d 149, 156 (2d Cir. 2009) (*quoting Lynn v. Bliden*, 443 F.3d 238, 246 (2d Cir. 2006)) (alterations in original).

The Supreme Court has indicated that the "unreasonable application" standard is sensitive to the specificity of the rule in question:

> Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); *see Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009); *Serrano v. Fischer*, 412 F.3d 292, 297 (2d Cir. 2005). The due process right to fair notice is considered a general rule of law in this Circuit, and New York courts should be afforded "more leeway" in reaching outcomes in case-by-case determinations. *Ortiz*, 586 F.3d at 157; *see Yarborough*, 541 U.S. at 664.

### 2. Void for Vagueness Doctrine

A statute is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2007); *see also United States v. Lanier*, 520 U.S. 259, 266 (1997) (noting that "the vagueness doctrine bars

7

enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its intended meaning and differ as to its application."). The vagueness doctrine does not require "meticulous specificity." *Thibodeau v. Portundo*, 486 F.3d 61, 66 (2d Cir. 2007) (*quoting Grayned v. City of Rockford*, 408 U.S. 104, 100 (1972)). There are unavoidable ambiguities of language, but such uncertainties "do not transform every circumstance in which judicial construction is necessary into a violation of the fair notice requirement." *Ortiz*, 586 F.3d at 159. "The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky*, 407 U.S. 104, 110 (1972).

## C. Merits of the Claim

### 1. Former New York Penal Law § 235.22

There are two subsections of former New York Penal Law § 235.22. At the time of Kozlow's conduct § 235.22(1) provided that, to be guilty of disseminating indecent material to minors in the first degree, a person must intentionally communicate by computer with a minor "knowing the character and content of the *communication* which, in whole or in part *depicts* actual or simulated nudity, sexual conduct, or sado-masochistic abuse, and which is harmful to minors." § 235.22(1) (emphasis added).[2] The second subsection, § 235.22(2), required that the person use the computer communication to lure a minor "to engage in sexual intercourse, oral sexual conduct or anal sexual conduct, or sexual contact with him, or to engage in a sexual

---

[2] In March 2007, New York Penal law §235.22(1) was amended to add the words "or describes, either in words or images" directly after the word "depicts."

performance, obscene sexual performance, or sexual conduct for his benefit." Former N.Y. Penal Law § 235.22(2).

### 2. The New York Court of Appeals Decisions in *Foley* and *Kozlow*

In *Foley* the New York Court of Appeals considered several Constitutional challenges to former New York Penal Law § 235.22, holding that it did not place a burden on interstate trade and was neither overly broad nor unconstitutionally vague. *People v. Foley*, 94 N.Y.2d 668 (2000). The decision emphasized that the language in § 235.22 ensured that the proscribed conduct was not merely speech but rather intentional "acts of communication" that fell "within the scope of otherwise valid criminal laws that reflect legitimate State interests." *Foley*, 94 N.Y.2d at 675-79. In response to the challenge that § 235.22 was unconstitutionally vague because the second subsection, or the "luring prong," was unacceptably ambiguous, the Court of Appeals found that "*each and every term* of Penal Law § 235.22 is either defined in the Penal Law or has a plain and ordinary meaning." *Foley*, 94 N.Y.2d at 681 (emphasis added). It further held that "[t]he combination of the precise terms described in the statute and the clearly pronounced elements 'adequately defines the criminal conduct for the police officers, Judges and juries who will enforce the statute.' " *Foley*, 94 N.Y.2d at 681-682 (*quoting Shack*, 86 N.Y.2d at 539).

Both the majority and dissent in *Kozlow* agreed that *Foley* "does not stand for the proposition that a sexual predator must send his target sexual images in order to violate Penal Law § 235.22." *Kozlow*, 8 N.Y.3d at 561; *see also Kozlow* 8 N.Y.3d at 563 (Smith, dissenting) ("our decision in *Foley* did not turn on the distinction between images and words"). In *Kozlow*, the Court of Appeals noted that because the defendant in *Foley* had sent sexual images to a person he believed to be a 15-year-old girl, "the language of our opinion turned more than once

9

to pedophiles' use of sexual images to lure minors." *Kozlow*, 8 N.Y.3d at 561. It concluded that the decision in *Foley* never limited § 235.22 to communications including images, but rather "correctly construed [§ 235.22] to criminalize the use of any 'sexually explicit *communications*' intended to lure children into sexual conduct." *Id.* at 561 (*quoting Foley*, 94 N.Y.2d at 709)(emphasis in original). Thus, prior to *Kozlow*, the Court of Appeals had not directly addressed the issue of whether § 235.22 proscribed text-only computer communications intended to lure children into sexual activity, or whether it was limited to communications including sexually explicit images.

In *Kozlow*, the New York Court of Appeals observed that the meaning of the word "depict" is to "*represent in a picture . . .* [and it] also has a standard sense of *represent or portray in words* and it has been used in that manner since the colonial era." *People v. Kozlow*, 8 N.Y.3d at 228 (*quoting* 4 Oxford English Dictionary 477 [2d ed. 1989]) (emphasis in original). The Court of Appeals accordingly held that the legislative language of former New York Penal Law § 235.22 proscribed the dissemination of any sexually explicit computer communications intended to lure minors, including text-only communications. *Kozlow*, 8 N.Y.3d at 674. It further held that the statute, as construed to include text-only communications, "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Kozlow*, 8 N.Y.3d at 561 (*quoting People v. Shack*, 86 N.Y.2d 529, 538 (2d Cir. 1995)). Addressing Kozlow's vagueness claim, the Court of Appeals concluded: "We see no reason to depart from our holding in *Foley* that the statute is not unconstitutionally vague." *Kozlow*, 8 N.Y.3d at 561.

10

### 3. The Court of Appeals Decision that Former New York Penal Law § 235.22 Provided Fair Notice Was Not Unreasonable

#### a. The Court of Appeals did not unreasonably apply its analysis in *Foley* to the vagueness challenge in *Kozlow*

Kozlow contends that "the New York Court of Appeals' cursory examination of Mr. Kozlow's due process rights can only be described as objectively unreasonable." (Pet'r's Reply Mem. of Law in Further Supp. of Pet. for Writ of Habeas Corpus ("Pet'r's Reply Mem.") at 19.) He argues that because *Foley* only addressed a vagueness challenge to the second prong of the statute, and never reached the first, it could not control the issue presented in *Kozlow*. (Pet'r's Mem. at 47). However, in *Foley* the Court of Appeals rejected the vagueness challenge on the grounds that "each and every term" of § 235.22 was either defined or had a plain and ordinary meaning that conveyed sufficiently definite warning as to what was proscribed. *Foley*, 94 N.Y.2d at 681. After finding that the plain and "ordinary meaning" of the word "depicts" had been established since the colonial era to include representations in words, it was not unreasonable for the Court of Appeals to extend the holding in *Foley* to the word "depicts." *Kozlow*, 8 N.Y.3d at 228.

#### b. The Court of Appeals did not unreasonably expand criminal liability

Kozlow contends that in *Foley* the New York Court of Appeals narrowly construed "depicts" to proscribe only communications including images. (Pet'r's Mem. at 36-38.) He argues that his case is, therefore, analogous to *Bouie*, where the Court observed that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964). In *Bouie*, the Court held that the petitioners were denied due process when "the South Carolina Supreme Court interpreted a criminal trespass statute to cover 'the act of remaining on the premises of another after receiving notice to leave,' and applied that interpretation to the defendants' conduct even

11

though South Carolina case law up to that period had 'emphasized that proof of notice before entry was necessary to sustain a conviction.' " *Ortiz*, 586 F.3d at 14 (*quoting Bouie* 378 U.S. at 350-56)(citations omitted).

This case is distinguishable from *Bouie* because prior to *Kozlow* the New York Court of Appeals had not reached the issue of whether § 235.22 proscribed purely textual communications. At different places in the opinion, *Foley* indicated that § 235.22 proscribed the dissemination of "sexually oriented communications," or "sexual images," or "sexually graphic material." *Foley*, 94 N.Y.2d at 681-83. Nowhere does the decision expressly indicate that the prohibited communications are limited to those including visual images. Hence, the New York Court of Appeals' conclusion that *Foley* did not narrowly construe the word "depicts" was not unreasonable. Its interpretation of *Foley* therefore did not unreasonably expand criminal liability or provide a "new" judicial interpretation of the word "depicts," and was not an "impermissible retroactive *change* in the law, violating due process." *Ortiz*, 586 F.3d at 158 (emphasis in original).

### c. It was no unreasonable for the Court of Appeals to uphold § 235.22 despite inconsistent interpretations in the lower courts and among state actors

Kozlow argues that the Court of Appeals decision in his case was unreasonable because it ignored the fact that "two Judges of the Court of Appeals, four Justices of the Appellate Division, two Justices of the Supreme Court, the Governor who signed the bill into law, the two Attorneys General who defended the law's constitutionality, and the District Attorney who argued *Foley* all agreed that § 235.22 applied only to images." (Pet'r's Mem. at 19-20.) However, the fact that more narrow constructions had been proffered by New York's attorneys and various judges prior to the Court of Appeals' decision in *Kozlow* does not mean that § 235.22 was unconstitutionally vague. Disagreements regarding a statute's construction among

the lower courts are not dispositive of its unconstitutional vagueness. Nor does the fact that a lower court finds a statute void for vagueness preclude the possibility that it meets the fair notice requirements. *See, e.g., United States v. Williams*, 553 U.S. 285 (2008) (reversing the Eleventh Circuit and holding that PROTECT Act was not impermissibly vague under the Due Process Clause). The vagueness doctrine does not suggest that all courts and state officials must agree on a specific construction of a statute in order for it to meet the fair notice requirement.

*Kozlow* held that the "ordinary meaning" of "depicts" included representations not only in images but also in words. *Kozlow*, 8 N.Y.3d at 558. Accordingly, it was objectively reasonable for the Court of Appeals to conclude that a person of ordinary intelligence would have had fair notice of the "ordinary meaning" of "depicts," irrespective of whether the State's attorneys or judges had previously proposed a more narrow construction of the word.

### d. The Court of Appeals' construction of § 235.22 was not unreasonably novel

The Court need only consider whether the New York Court of Appeals' construction of former New York Penal Law § 235.22 was so unreasonable that it deprived Kozlow of fair warning that his conduct was prohibited. *Rogers v. Tennessee*, 532 U.S. 451, 459 (2001) (finding it unconstitutional for a court to apply a novel construction of a criminal statute that has not been "fairly disclosed to be within its scope"). The precedent on the fair warning principle is "both clear and long standing: 'The Due Process Clause requires only that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden, and thus not lull the potential defendant into a false sense of security . . . .' " *Ortiz*, 586 F.3d at 159 (*quoting Rubin v. Garvin*, 544 F.3d 1137 (2d Cir. 2008)). *Kozlow* appears to be the first time the New York courts addressed the meaning of "depicts" in this context, but the Second Circuit has "made clear that [d]ue process is not . . . violated simply because the issue is a matter of first

13

impression." *Ortiz*, 586 F.3d at 159 (*quoting Ponnapula v. Spitzer*, 297 F.3d 172, 183 (2d Cir. 2002)) (internal quotation marks omitted).

Kozlow contends that because the New York Penal Laws had a history of using the words "depict" and "describe" to distinguish between written and visual pornography, when the Legislature incorporated the word "depict" into § 235.22 a reasonable person would have logically understood the statute to proscribe only the dissemination of sexual images. The New York Court of Appeals conceded that "[i]t is certainly true that preexisting language of Penal Law § 235.21 distinguishes between a "visual representation or image . . . which depicts nudity, sexual conduct or sado-masochistic abuse" and "explicit and details verbal descriptions or narrative accounts." *Kozlow*, 8 N.Y.3d at 560. It was not unreasonable, however, for the Court of Appeals to conclude that because the ordinary meaning of the word "depicts" has long included representations in words, the statutory language of former New York Penal Law § 235.22 gave fair notice that sexually explicit text-only communications intended to lure minors were proscribed.

In *Kozlow* the New York Court of Appeals provided a practical construction of former New York Penal Law § 235.22 consistent with the statutory language and analogous case law. Thus, particularly given the "leeway we owe New York courts in applying the fair notice requirement, a general standard," *Ortiz,* 586 F.3d at 161, it was not objectively unreasonable for the New York Court of Appeals to find that § 235.22 provided fair notice to a person of ordinary intelligence of what was prohibited.

14

## IV. CONCLUSION

For the foregoing reasons, I recommend that Kozlow's Petition for a writ of habeas corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Laura Taylor Swain, 500 Pearl Street, Room 755, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

**Dated: December 14, 2010**
**New York, New York**

**Respectfully Submitted,**

*[signature]*

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

Counsel for Petitioner
Nathaniel Z. Marmur
Stillman, Friedman & Shectman, P.C.
425 Park Avenue
New York, NY 10022

Counsel for Respondent
John James Sergi
Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10552

15